IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAMMY L. CRAWFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 10-949-GMS-SRF ) |
| GEORGE & LYNCH, INC., *et al.*, | ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the Court in this sexual harassment, gender discrimination, and retaliation action brought under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), is a motion for partial dismissal of the amended complaint, filed by defendants George & Lynch, Inc. ("G&L") and Leonard J. Brooks ("Brooks") (together, "Defendants") on March 21, 2012. (D.I. 71) Defendants assert three claims for relief: (1) dismissal of plaintiff Crawford Trucking Company, LLC ("CTC"); (2) dismissal of defendant Brooks; and (3) dismissal of the claims for breach of the covenant of good faith and fair dealing. For the following reasons, I recommend that Defendants' motion be granted in part and denied in part. Specifically, I recommend that the Court grant Defendants' motion as to the dismissal of CTC as a plaintiff in all counts, and dismissal of Brooks as a defendant in all counts. I recommend that the Court deny the motion as to dismissal of Crawford's claim at Count V for breach of the covenant of good faith and fair dealing.

## II. BACKGROUND

Plaintiffs Tammy L. Crawford ("Crawford") and CTC (together, "Plaintiffs") initiated this harassment, discrimination, and retaliation action against Defendants by filing a complaint in this Court on November 5, 2010. (D.I. 1) Plaintiffs amended the complaint on March 7, 2012, alleging causes of action for: (1) hostile work environment under Title VII (Crawford against G&L); (2) gender discrimination (Crawford against G&L); (3) retaliation (Crawford and CTC against G&L); (4) promissory estoppel / detrimental reliance (Crawford and CTC against all Defendants);[1] and (5) breach of covenant of good faith and fair dealing (Crawford and CTC against all Defendants). (D.I. 57 at ¶¶ 110-150) These claims are based on events that occurred during Crawford's employment with G&L.

In her capacity as an owner of CTC, Crawford entered into a hauling contract with G&L on behalf of CTC and maintained an ongoing business relationship with G&L for several years beginning in 2003. (*Id.* at ¶¶ 14-18) Crawford was then recruited for a position as a dispatcher with G&L. (*Id.* at ¶¶ 13, 19) Crawford expressed concern that accepting the position at G&L might adversely affect G&L's business relationship with CTC, but she accepted the position after receiving assurances from Brooks, the Vice President of Administrative Services for G&L, that this would not be an issue. (*Id.* at ¶¶ 10, 20-23) Crawford began working for G&L on June 19, 2008. (*Id.* at ¶ 23)

---

[1] In the amended complaint, the misnumbered retaliation and promissory estoppel / detrimental reliance claims are both listed as "Count III." For purposes of this memorandum, the claim for promissory estoppel / detrimental reliance will be identified as "Count IV," and the claim for breach of covenant of good faith and fair dealing will be identified as "Count V."

2

Immediately after Crawford started working at G&L, G&L employee Mike Bursich began sexually harassing her. (*Id.* at ¶ 30) Crawford reported the sexual harassment on July 30, 2008, and the next day, G&L transferred Crawford to another work location and demoted her. (*Id.* at ¶¶ 64-70) At the same time, the business relationship between G&L and CTC was effectively terminated. (*Id.* at ¶¶ 96-103) On September 18, 2008, Crawford was discharged from her position at G&L because she had allegedly resolved all of the issues she was required to handle and "worked herself out of a job." (*Id.* at ¶¶ 79, 85)

Crawford filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC") on September 22, 2008, alleging claims for sexual harassment and retaliation based on G&L's termination of her employment. (*Id.* at ¶ 104) On July 19, 2010, the DDOL issued a Final Determination and Notice of Right to Sue Letter, which became effective on July 27, 2010. (*Id.* at ¶ 106) On September 1, 2010, the EEOC issued a Federal Right to Sue Letter. (*Id.* at ¶ 108)

## III. DISCUSSION

### A. Dismissal of CTC from the retaliation claim

#### 1. CTC's standing to sue under Title VII

Defendants contend that CTC should be dismissed from the retaliation count because CTC is not an "employee" and therefore lacks standing to sue under Title VII. (D.I. 71 at 3) Specifically, Defendants contend that no authority supports an extension of Title VII to non-person, non-employee entities. (D.I. 93 at 2)

In response, Plaintiffs contend that CTC is a proper party in light of the Supreme Court's recent decision in *Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011), which

3

supports the proposition that third party retaliation is actionable under Title VII. (D.I. 84 at 3) Applying *Thompson*, Plaintiffs contend that CTC was within the "zone of interests" sought to be protected by the statutes because Crawford raised the issue of potential retaliation against CTC prior to her acceptance of the job with G&L. (*Id.* at 5-6) Plaintiffs concede that the third party retaliated against in *Thompson* was also an employee of the company, but they contend that other courts have extended standing to non-employee spouses and friends of the complaining party. (*Id.* at 4)

The language of Title VII does not support an extension of these principles to an entity that is adversely impacted as a result of an employer's retaliation against its employee. Specifically, Title VII defines "employee" as "an individual employed by an employer," a definition that does not include a corporate entity. 42 U.S.C. § 2000e(f). The statute provides that "[i]t shall be an unlawful employment practice for an employer – (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). The statute further provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). These provisions do not apply to CTC as a non-employee corporate entity that cannot participate in protected activity.

Plaintiffs misconstrue *Thompson* and its progeny. The Supreme Court in *Thompson* held

4

that the plaintiff fell within the zone of interests protected by Title VII because he was an employee of the defendant, noting that Title VII's purpose is to protect employees from their employers' unlawful actions. *See Thompson*, 131 S. Ct. at 870. The Supreme Court concluded that the defendant fired the plaintiff in order to retaliate against the plaintiff's fiancee, who had previously filed a complaint for discrimination with the EEOC. *Id.* The facts of *Thompson* are not analogous to the situation presented in the instant matter because CTC is an entity that was not employed by G&L. Title VII expressly states that it is to protect employees from their employers' unlawful actions, and as a non-employee entity, CTC does not fall within the zone of interests.[2]

Plaintiffs also cite two decisions from district courts outside of the Third Circuit in support of their argument. In *McGhee v. Healthcare Services Group, Inc.*, 2011 WL 818662, at *2-3 (N.D. Fla. Mar. 2, 2011), the plaintiff was employed by a subcontractor of the company that employed his wife. The plaintiff's wife filed a charge of discrimination against her employer, after which the subcontractor terminated the plaintiff at the request of his wife's employer. *Id.* The court denied the defendant's motion to dismiss, concluding that allowing an employer to induce its subcontractor to fire the subcontractor's employee in retaliation for the protected activity of the terminated employee's spouse, would contravene the purpose of Title VII. *Id.* The court found that the two employers and their employees were "intertwined." *Id.* at *3.

---

[2]The Supreme Court's extension of Title VII to third party reprisal claims is not without limitation. For example, the Supreme Court noted in *Thompson* that a shareholder could not sue a company for firing a valuable employee for discriminatory reasons even if it could be shown that the value of the stock decreased as a result. *Thompson*, 131 S. Ct. at 869. Plaintiffs' argument falls into the foregoing category, i.e., a non-employee suing a company for alleged economic losses as a result of unlawful actions taken by the company towards an employee. *See id.*

In *Ali v. District of Columbia Government*, 810 F. Supp. 2d 78, 89 (D.D.C. 2011), the plaintiff claimed retaliation based on his employer's threats to terminate his best friend, who was employed by the same entity. The court denied summary judgment on the retaliation claim, concluding that a factual dispute existed as to whether threatening the plaintiff's best friend with termination was unlawful under *Thompson*. *Id.*

Neither of these cases supports the theory that Title VII extends to non-person entities, or that a company such as CTC would fall within the "zone of interests" intended to be protected by the statute. Each case cited by Plaintiffs involves an individual employee alleging a claim of retaliation for engaging in protected activity, based on actions taken by the same employer or a subcontractor of the employer, against another individual employee. Thus, a reprisal against another employee, who is a relative or close friend of the subject employee alleging the employment violation, may support a charge of retaliation under Title VII. However, accepting Plaintiffs' argument that an employer's termination of a contract with a business entity owned by an employee constitutes retaliation for the employee's protected conduct, would result in a new and substantial expansion of the law on third party reprisal claims under Title VII.

### 2. CTC's exhaustion of administrative remedies

Next, Defendants contend that Crawford's Charge of Discrimination did not include CTC as a Charging Party, and CTC would be required to exhaust its administrative remedies to assert a valid claim for retaliation under Title VII. (D.I. 71 at 3) In response, Plaintiffs contend that CTC exhausted its administrative remedies through Crawford because Crawford timely filed a complaint with the DDOL and the EEOC. (D.I. 84 at 6) According to Plaintiffs, CTC qualifies as a person aggrieved under the Administrative Procedures Act because the term "person"

includes corporate entities, and courts have recognized the rights of companies to sue based on hostile workplace theories under 42 U.S.C. § 1981. (*Id.*)

Title VII requires the exhaustion of administrative remedies before a civil suit may be filed. 42 U.S.C. § 2000e-5(e). Plaintiffs do not contend that CTC separately filed a Charge of Discrimination and cite no authority indicating that an individual plaintiff such as Crawford may exhaust administrative remedies on behalf of a corporate entity such as CTC. CTC's failure to fulfill this requirement highlights the fact that Title VII was intended to protect individual employees, and was not intended to extend to non-employee business entities.

### 3. Damages for actions taken against CTC

Plaintiffs alternatively argue that Crawford should be allowed to pursue a claim for damages from termination of CTC's hauling contract, upon CTC's dismissal from the case. (D.I. 84 at 7) In support of this argument, Plaintiffs cite *Allen v. Radio One of Texas II, LLC* for the proposition that a plaintiff employee has standing to sue for damages arising from an employer's failure to do business with the plaintiff's company. *See Allen v. Radio One of Texas II, LLC*, 2011 WL 5156688 (S.D. Tex. Oct. 28, 2011).

In *Allen*, the district court held that the jury had sufficient evidence to find that the defendant employer retaliated against the plaintiff employee by refusing to do business with the plaintiff's company. *Id.* at *2. As a result, the plaintiff could recover damages for the harm caused by the defendant. *Id.* Defendants do not refute Plaintiffs' arguments on this issue or cite authority contrary to *Allen*. (D.I. 93)

CTC is not a proper plaintiff in this Title VII action for the reasons previously stated. However, the *Allen* court cites the Supreme Court's decision in *Thompson* for the proposition

7

that the plaintiff may recover damages from the defendant relating to the loss of business incurred by the plaintiff's company because the retaliation was directed at the plaintiff, not her company. *Allen*, 2011 WL 5156688, at *2. Therefore, Crawford is not barred from pleading a claim for damages stemming from termination of her company's hauling contract. Whether or not Crawford is entitled to recover such damages is not an issue which is the subject of the pending motion.

### B. Dismissal of Brooks as a Defendant

Defendants contend that Brooks is not a proper defendant with respect to Plaintiffs' causes of action for promissory estoppel / detrimental reliance and breach of the covenant of good faith and fair dealing. (D.I. 71 at 4) Specifically, Defendants contend that the amended complaint sets forth only actions taken by Brooks on behalf of G&L in the course and scope of his employment, and as a result, Brooks cannot be personally liable for acts performed on behalf of his employer. (*Id.*) Defendants cite this Court's decision in *Owens v. Connections Community Support Programs, Inc.* for the proposition that "a suit naming an individual in his official capacity is considered a suit against the employer." *Owens v. Connections Cmty. Support Programs, Inc.*, 2012 WL 37153, at *3 (D. Del. Jan. 6, 2012). "Thus, if the employer is named as a defendant, the same discrimination claim against an employee in his official capacity is redundant." *Id.*

In response, Plaintiffs contend that Brooks should not be dismissed because he is subject to personal liability for promising Crawford that her acceptance of employment with G&L would not adversely affect CTC's relationship with G&L. (D.I. 84 at 8) According to Plaintiffs, the issue of whether Brooks was acting independently or in the scope of his employment is an issue

8

of fact to be decided by the jury. (*Id.*)

The amended complaint does not set forth facts or allegations indicating that Brooks did not act in his official capacity. In fact, Plaintiffs appear to refute their own argument in their brief by stating that "Plaintiffs specifically plead that G&L through Brooks promised Crawford that CTC would not be retaliated against." (D.I. 84 at 8) It is well-established in the Third Circuit that Title VII bars discrimination claims against individual employees and supervisors. *See Sheridan v. E.I. duPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (en banc). In light of the allegations in the amended complaint and well-established Third Circuit case law, I recommend that the Court dismiss Brooks as a defendant in the present action.

### C. Promissory Estoppel / Detrimental Reliance

Defendants contend that Plaintiffs' claim for promissory estoppel / detrimental reliance fails as it pertains to CTC because the allegations in the amended complaint are based on an alleged promise made by G&L to Crawford in the scope and course of Crawford's employment with G&L.[3] (D.I. 71 at 3-4)

The amended complaint asserts claims by both Plaintiffs that G&L promised Crawford that accepting employment with G&L would not adversely affect G&L's contract with CTC. Crawford relied upon this promise to the detriment of both Plaintiffs when the contract was terminated. To prevail on a claim for promissory estoppel under Delaware law, a plaintiff must show, by clear and convincing evidence, that: "(1) a promise was made; (2) it was the reasonable expectation of the promisor . . . to induce action or forbearance on the part of the promisee; (3)

---

[3] Defendants cite no authority in support of this conclusion, and Plaintiffs do not respond to Defendants' argument on this point. Furthermore, as the argument in the pending motion only relates to CTC, the claims of the individual plaintiff, Crawford, in this count are not dismissed.

the promisee ... reasonably relied on the promise and acted to his detriment; and (4) that such a promise is binding because injustice will be avoided only by enforcement of the promise." *Ramone v. Lang*, 2006 WL 905347, at *14 (Del. Ch. Apr. 3, 2006).

As alleged in the amended complaint, G&L was the promisor, Crawford was the promisee, and CTC was the subject of the promise. (D.I. 57 at ¶¶ 139-45) CTC's claim for promissory estoppel fails because Plaintiffs base the claim on G&L's promise to Crawford not to retaliate against CTC, and not on a promise made to CTC. Moreover, no claims have been asserted by CTC against G&L for termination of the hauling contract.

### D. Breach of Covenant of Good Faith and Fair Dealing

Defendants contend that Plaintiffs' claim for breach of the covenant of good faith and fair dealing is insufficient as a matter of law because Plaintiffs fail to allege facts indicating that Crawford was terminated as a result of Defendants' falsification of her employment records. (D.I. 71 at 4-5) Defendants contend that, even if the allegations could be construed to allege the necessary facts, the claim fails as it pertains to CTC because CTC is not alleged to have been employed by G&L as required under Delaware law. (*Id.* at 5) Defendants further contend that Plaintiffs' claim for breach of the covenant of good faith and fair dealing is preempted by the Delaware Discrimination Employment Statute. (D.I. 93 at 6)

Plaintiffs respond that the claim for breach of the covenant of good faith and fair dealing is properly stated because Crawford was enticed to accept employment with G&L as a result of representations that her employment would not affect the business relationship between G&L and CTC. (D.I. 84 at 8) According to Plaintiffs, an employee may bring a claim based on the covenant of good faith and fair dealing in Delaware if the termination violates public policy, or if

10

the employer misrepresented an important fact and the employee relies on the misrepresentation either to accept a new position or remain in the current one. (*Id.* at 9)

Under Delaware law, the covenant of good faith and fair dealing is recognized as a limited exception to the presumption of at-will employment, which allows dismissal of an employee at any time without cause. *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 442-44 (Del. 1996). To bring a claim for breach of the covenant of good faith and fair dealing, a plaintiff must demonstrate that the claim falls into one of four narrow categories:

(1) where the termination violated public policy;

(2) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one;

(3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and

(4) where the employer falsified or manipulated employment records to create fictitious grounds for termination.

*Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000).

The Delaware Supreme Court previously recognized a common law cause of action for breach of the covenant of good faith and fair dealing on public policy grounds when an employee alleged that she was terminated following sexual harassment in the workplace. *Schuster v. Derocili*, 775 A.2d 1029, 1039-40 (Del. 2001). However, the Delaware legislature subsequently amended the statute regarding employment discrimination in 2004, expressly superceding the court's holding in *Schuster* to provide that the statute is the "sole remedy for claims alleging a violation of the subchapter to the exclusion of all other remedies." 19 *Del. C.* § 712(b). Since the statutory amendment, both the Third Circuit and this Court have recognized that a claim for

11

breach of the covenant of good faith and fair dealing based on at-will employment cannot survive under the public policy theory set forth in *Lord*. *See E.E.O.C. v. Avecia, Inc.*, 151 Fed. App'x 162, 165 (3d Cir. 2005); *Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 333 (D. Del. 2007) (holding that recovery under breach of covenant claim based on violation of public policy for breach of at-will employment contract was precluded under Delaware Discrimination Employment Statute); *Yatzus v. Appoquinimink Sch. Dist.*, 458 F. Supp. 2d 235, 248 (D. Del. 2006) (same).

To the extent that Plaintiffs' claim for breach of the covenant is based on alleged violations of public policy,[4] it cannot survive because it is statutorily preempted by the Delaware Discrimination Employment Statute. *See* 19 *Del. C.* § 710 *et seq.*; *Avecia*, 151 Fed. App'x at 165.

Defendants also contend that the claim fails under the fourth category regarding the falsification or manipulation of employment records to create fictitious grounds for termination. (D.I. 71 at 5) Plaintiffs do not refute Defendants' contentions on this point, and, instead, base their arguments on the first and second *Pressman* categories regarding public policy and misrepresentation of fact, respectively. (D.I. 84 at 9-10) Therefore, the Court will not consider

---

[4]Defendants object to the Court's consideration of this argument, contending that Plaintiffs raised this argument for the first time in their brief in opposition to the motion to dismiss. (D.I. 93 at 6) A plaintiff's failure to specify in his pleading which of the four categories forms the basis for his claim of breach of the covenant of good faith and fair dealing has not prevented this Court from performing its own analysis of whether any of the four categories apply, based upon consideration of the facts stated generally in the pleading. *See Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 333 (D. Del. 2007) ("Plaintiff does not indicate under which theory he proceeds in count four. Nonetheless, it is clear that categories two and three, as discussed above, are inapplicable to this case. It may be that plaintiff proceeds under a violation of public policy theory as set forth in category one . . .").

the fourth category as a basis for maintaining the breach of covenant claim.

However, the Court declines to dismiss this count in its entirety at this stage of the proceedings. Crawford's amended complaint, which incorporates all factual averments within each count, is sufficient at the pleadings stage to support a breach of covenant claim under the second *Pressman* category, which applies to misrepresentations "targeted to ensnare a specific employee and alter in some way his status as an at-will employee." *Brodsky v. Hercules, Inc.*, 966 F. Supp. 1337, 1351 (D. Del. 1997). In this case, Plaintiffs argue that Crawford was "induced" to accept employment with G&L based on G&L's misrepresentation that it would not have adverse consequences on the ongoing business relationship with CTC. (D.I. 84 at 9) Accordingly, it would be premature to dismiss Crawford's cause of action at this stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The request for dismissal of CTC's claim for breach of the covenant of good faith and fair dealing presents a separate issue. Plaintiffs base CTC's claim for breach of the covenant of good faith and fair dealing solely on the fact that CTC was "retaliate[d] against," tying it to the employment discrimination charges. (D.I. 84 at 9) CTC is not an employee of G&L, for the reasons stated in the Title VII analysis. Therefore, CTC lacks standing to assert a state law claim for breach of the covenant of good faith.

Moreover, CTC does not plead any independent cause of action based upon its contractual relationship with G&L. CTC maintained a contract with G&L for hauling services that would not implicate the special considerations given to at-will employment under Delaware law. However, Plaintiffs do not assert a claim for breach of the hauling contract. The amended

13

complaint alleges that CTC and G&L entered into the hauling services contract long before Crawford was hired, and it contains no allegations that termination of the contract was improper, other than in retaliation for Crawford's employment related claims against G&L. Therefore, I recommend that the claim for breach of the covenant of good faith and fair dealing be dismissed as to CTC.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the Court: (1) grant Defendants' motion to dismiss CTC from Counts III, IV and V of the amended complaint for retaliation under Title VII, promissory estoppel / detrimental reliance, and breach of the covenant of good faith and fair dealing, respectively; (2) grant Defendants' motion to dismiss Brooks from Counts IV and V of the amended complaint for promissory estoppel / detrimental reliance and breach of the covenant of good faith and fair dealing, respectively; and (3) deny Defendants' motion to dismiss Crawford from Count V of the complaint for breach of the covenant of good faith and fair dealing.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in Non Pro Se matters for Objections filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: July 5, 2012

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE