## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAMMY L. CRAWFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-949-GMS-SRF |
| | ) |
| GEORGE & LYNCH, INC., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM ORDER**

### I.     INTRODUCTION

Presently before the court in this sexual harassment, gender discrimination, and retaliation action brought under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), are the following motions: (1) the motion to strike of plaintiff Tammy L. Crawford ("Crawford" or "Plaintiff"), filed on August 17, 2012 (D.I. 167); and (2) defendant George & Lynch, Inc.'s ("G&L" or "Defendant") motion to strike and for sanctions, filed on September 20, 2012 (D.I. 185).[1] For the following reasons, Crawford's motion to strike is denied, and G&L's motion to strike and for sanctions is granted-in-part and denied-in-part.

---

[1]Also pending before the court are the following: (1) a motion for summary judgment filed by G&L and Leonard J. Brooks, Jr. ("Brooks") (D.I. 156); (2) a motion for partial summary judgment, filed by plaintiff Tammy L. Crawford ("Crawford" or "Plaintiff") (D.I. 157); and (3) G&L's motion to preclude the testimony or report of Elizabeth Watson Gramigna ("Gramigna") (D.I. 155). The court addresses the motions for summary judgment in a Report and Recommendation issued contemporaneously herewith. The court addresses the motion to preclude Gramigna's expert report and testimony in a separate Memorandum Order issued on this same date.

## II.    BACKGROUND

The background relevant to this action has been set forth more fully by the court in the Report and Recommendation addressing the parties' motions for summary judgment, which was filed on this same date. For purposes of the present motions, the relevant facts are as follows.

Beginning on January 3, 2012, Crawford submitted document requests and interrogatories to G&L, requesting any documents regarding Crawford's job performance, as well as any documents describing the reasons for Crawford's transfer and termination. (D.I. 167 at 3-4) G&L's responses did not identify the July 21, 2008 meeting (the "Meeting") or any documents in connection with the Meeting.[2] (*Id.*) On March 22, 2012, G&L agreed to search the term "Order Processor" at Crawford's request, but no documents regarding the Meeting came up in the search. (*Id.* at Ex. C) Crawford sent G&L a deficiency letter on March 28, 2012, but G&L responded that it would only produce documentation from the named defendant, and would not produce documentation from any other entity. (*Id.* at Exs. D, E)

Counsel for Crawford took the deposition of Kevin Jones ("Jones"), a General Manager for G&L, on June 19, 2012. (D.I. 122) During the deposition, Jones described problems with Crawford's job performance during her employment at G&L. (D.I. 181, Ex. 4 at 19) Counsel for Crawford asked Jones to supplement his deposition with documentation outlining the issues that arose with respect to Crawford's job performance. (*Id.* at 21-23) In response to this request, Jones produced the agenda from the Meeting (the "Agenda"), along with other documents in connection with the Meeting (together with the Agenda, the "Documents") on July 24, 2012.

---

[2] The "Meeting" relates to a meeting between representatives of River Asphalt LLC and G&L that occurred on July 21, 2008, for which an agenda dated "7/18/08" was prepared. The agenda is the subject of the dispute in issue. (D.I. 167, Ex. A)

2

(D.I. 181, Exs. 5-7) Counsel for G&L also offered to make Jones available for deposition. (*Id.*, Ex. 7) On July 31, 2012, G&L received the affidavit of John R. Kibblehouse, Sr. (the "Kibblehouse Affidavit"), which corroborated the Agenda and confirmed the date of the Meeting. (D.I. 159; D.I. 181, Exs. 8 & 9)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Courts within the Third Circuit evaluate harmlessness and substantial justification based on the following factors: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence. *Konstantopoulos v.Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *rev'd on other grounds, Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987). The determination of whether to exclude evidence is ultimately committed to the discretion of the court. *Quinn v. Consol. Freightways Corp. of Del.*, 283 F.3d 572, 576 (3d Cir. 2002).

3

## IV. DISCUSSION

### A. Crawford's Motion to Strike the Agenda

By way of her motion to strike, Crawford requests that the court strike the Documents and the Kibblehouse Affidavit or any reference thereto. (D.I. 167 at 1) Crawford also seeks attorney's fees caused by G&L's failure to timely produce the Documents. (*Id.*)

In support of her request for relief, Crawford contends that G&L did not disclose the Documents until July 24, 2012, or the Kibblehouse Affidavit until July 30, 2012, even though discovery closed on June 30, 2012. (*Id.* at 2) Crawford references her repeated attempts to obtain the Documents through the discovery process, claiming that G&L failed to respond to those requests in a meaningful way. (*Id.* at 6) Crawford characterizes the late disclosure of the Documents as a "game changer," rendering "hundreds of hours of Plaintiffs' discovery efforts misguided." (D.I. 188 at 3) Crawford contends that she would have to restart the discovery process to cure the prejudice she has suffered and accuses G&L of withholding the documents in bad faith. (*Id.* at 8)

In response, G&L contends that the Documents support evidence already contained in the record, precluding a finding that Crawford was prejudiced by production of the Documents. (D.I. 181 at 5) G&L alleges that Crawford is not prejudiced by its failure to identify Kibblehouse in its Rule 26 disclosures because Kibblehouse possessed no relevant knowledge beyond the facts surrounding the Meeting. (*Id.* at 6) Moreover, G&L notes that the Documents were produced promptly after they were requested at Jones' deposition. (*Id.* at 6-7) According to G&L, Crawford was offered and declined the opportunity to depose Jones to cure any prejudice. (*Id.* at

4

8) G&L contends that it would have no reason to withhold evidence that weighs so strongly in its favor against Crawford's retaliation claim. (*Id.*)

Crawford's motion to strike is denied because she fails to demonstrate that she was prejudiced by the untimely disclosure of the Documents. Specifically, the Documents support evidence that was in the record prior to the close of discovery. The Agenda lists two items under "Old Business," including "Having issues with truckers and G&L's Order Processor," and "Wait time is not reconciled." (D.I. 167 at Ex. A) The first issue concerns purported complaints that G&L received from certain truckers that Crawford was giving preferential treatment to her own company. The second issue concerns G&L's potential exposure for making excess payments to truckers kept waiting in their yard beyond a specified time, for example, thirty minutes. These issues were previously identified during Jones' deposition, which occurred prior to the close of fact discovery:

> A. She was in Dover because she needed to be close to me.
>
> Q. Okay. Because?
>
> A. Because I work out of Dover.
>
> Q. Okay. Because? I mean why?
>
> A. Because we had an issue with the wait time.
>
> . . .
>
> Q. All right. And you had - - you had had that issue for 12 months before she went to Dover?
>
> A. We had that issue for 12 months, and part of her job that we - - when she was hired was that was one of the outstanding issues we had to get cleared up.

(D.I. 161 at A302-03)

> A. I don't remember a particular - - it's probably a - - a collection of conversations.

5

Q. Okay.

A. With the same general theme.

Q. And what was that?

A. That we had truckers that were upset because their records had been - - because they were being asked not - - they're telling them they couldn't haul because their insurances weren't - - weren't up to snuff, when actually they had insurances on file.

Truckers who said that they were being told that - - that - - from Frank Crawford that they have to haul under Crawford Trucking , because his old lady was running things now.

Truckers who complained the fact that they were being strong-armed at the plants to get out of line, because Crawford Trucking had preferred services.

Truckers who called and said that how come we're not using the rotation system like we're supposed to, you know, and Crawford Trucking seems to be a preferred service.

Those phone calls happened quite a bit within this time period.

(*Id.* at A304-05) This testimony suggests that Crawford was neither surprised nor prejudiced by the contents of the Documents.[3] The Documents do not contradict prior evidence in the record. Crawford fails to demonstrate how the information would have altered her discovery strategy had it been produced sooner.

Crawford also chose not to cure any arguable prejudice caused by the production of the Documents after the close of fact discovery. Crawford rejected G&L's offer to allow her to depose Kevin Jones again after she received the Documents. (D.I. 181 at 8) Moreover, Crawford did not attempt to request an extension of the fact discovery deadline after hearing Jones' deposition testimony regarding truck driver complaints and ongoing wait time issues, nor

---

[3]Bursich also identified issues with Crawford's job performance in his interview with a DDOL investigator in April of 2010. The investigator indicated that Bursich described "complaints . . . that [Crawford] was not giving business to their established companies and was funneling everything to her husband's business." (D.I. 160 at A114)

6

did she request a modification of the dispositive motion briefing schedule after receiving a copy of the Agenda on July 24, 2012.

The court further concludes that G&L did not act in bad faith in failing to produce the Documents prior to the close of discovery. G&L had no reason to withhold evidence regarding the Meeting because the Documents support G&L's arguments against Crawford's retaliation claim. The record shows that G&L produced the documents as soon as they became available and offered Crawford the opportunity to depose Jones either by telephone or in person, but Crawford declined. Moreover, Crawford's contentions regarding the lack of opportunity to review metadata are unfounded because the documents discovered in connection with the July 21, 2008 meeting were not stored in electronic format.

In light of these circumstances, the court declines to strike the Documents from the record and re-open the entire discovery process, as Crawford suggests.

### B. G&L's Motion to Strike and for Sanctions

#### 1. Rule 30(b)(6) witness testimony

In support of its motion to strike and for sanctions, G&L contends that the Rule 30(b)(6) deposition testimony of Leonard Brooks ("Brooks") exceeded the scope of permissible discovery because G&L objected to the list of topics contained in Crawford's notice of deposition, and Crawford asked questions outside the scope of the deposition notice during the course of the deposition. (D.I. 185 at 2-6) In response, Crawford contends that G&L fails to state with clarity which portions of the Rule 30(b)(6) witness' testimony it wishes to have stricken. Crawford further alleges that G&L failed to follow the proper procedure in objecting to the scope of the

7

Rule 30(b)(6) testimony, and argues that the questions asked during the deposition are permissible under the applicable Rule 26(b)(1) standard. (D.I. 193 at 1-5)

Rule 30(b)(6) permits a party to name a corporation or other organization as a deponent. The party seeking an organization's testimony "must describe with reasonable particularity the matters for examination," and the organization is required to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Determining whether information is known or reasonably available to a corporation involves a fact-specific analysis. *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010). The court should "not read Rule 30(b)(6) as carving out a special limitation on the scope of discovery defined in Rule 26(b)(1)." *Cabot Co. v. Yamulla Enters., Inc.*, 194 F.R.D. 499, 500 (M.D. Pa. 2000). Under Rule 30(b)(6), a party may obtain information from another party to the litigation concerning "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). As explained by the district court for the Southern District of New York,

> the same principle that is applied to interrogatories and document requests should also be applied to determine the scope of a party's obligation in responding to a Rule 30(b)(6) notice of deposition. There is no logical reason why the sources researched by a party in responding to a discovery request should be dependent on the particular discovery vehicle used; in all cases, the responding party should be obligated to produce the information under its control. Application of this principle to Rule 30(b)(6) discovery is not only consistent with the judicial interpretations of the other discovery provisions of the Federal Rules of Civil Procedure, it is also consistent with the purpose of discovery – "[to] make a trial less of a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, C.A. No. 01-3016, 2002 WL

1835439, at \*4 (S.D.N.Y. Aug. 8, 2002) (quoting *United States v. Procter & Gamble Co.*, 356
U.S. 677, 682 (1958)).

A Rule 30(b)(6) witness's testimony is binding on the corporation. *Harris v. New Jersey*,
259 F.R.D. 89, 92 (D.N.J. 2007). A corporation has an affirmative duty to produce a
representative who can answer questions that are within the scope of the matters described in the
notice. *Id.* The duty of preparation goes beyond the designee's personal knowledge and matters
in which the designee was personally involved. *Id.* If necessary, the deponent must use
documents, past employees, or other resources to obtain responsive information. *Id.*(citing
*United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)); *Bank of N.Y. v. Meridien BIAO
Bank Taz. Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

Courts are divided on the issue of whether a Rule 30(b)(6) deponent must answer all
relevant questions regardless of whether those questions or topics were noticed in the deposition.
Some courts have favored a rule that, regardless of the information contemplated in the notice of
deposition, the deponent must answer all relevant questions. *See King v. Pratt & Whitney*, 161
F.R.D. 475 (S.D. Fl. 1995) (holding that, if an examining party's questions exceed the scope of
the notice, the general deposition rules govern and no special protection is conferred to the
deponent, but if the deponent does not know the answer to questions outside the scope of matters
described in the notice, the examining party must deal with the issue); *see also Detoy v. City &
County of San Francisco*, 196 F.R.D. 362, 365-67 (N.D. Cal. 2000); *Cabot Corp. v. Yamulla
Enters., Inc.*, 194 F.R.D. 499 (M.D. Pa. 2000); *Overseas Private Inv. Corp. v. Mandelbaum*, 185
F.R.D. 67 (D.D.C. 1999). Courts within the Third Circuit fall into this category and generally
conclude that a Rule 30(b)(6) deponent must answer all inquiries that meet the requirements of

9

Rule 26. *See Bracco Diagnostics Inc. v. Amersham Health Inc.*, 2005 WL 6714281, at *1-2 (D.N.J. Nov. 7, 2005); *Azur v. Chase Bank USA, N.A.*, 2007 WL 2955614, at *1 (W.D. Pa. Oct. 9, 2007).

At this stage of the proceedings, I will not strike portions of the testimony of G&L's Rule 30(b)(6) witness. If the witness is called to testify at trial, then the trial judge is the proper authority to rule on objections to the scope or admissibility of the testimony. Discovery rules permit a wider range of questioning than what may be relevant or admissible at trial. *See Bracco*, 2005 WL 6714281, at *1 (applying the scope of discovery as defined in Rule 26(b)(1) to Rule 30(b)(6), and concluding that the information need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence).

Many of the topics in the deposition notice which G&L finds objectionable are relevant to Crawford's position under the Rule 26(b)(1) standard. As previously stated, the relevancy standard is broadly defined. *See* Fed. R. Civ. P. 26(b)(1). In the present case, for example, Crawford's inquiry regarding the identity of the shareholders, owners, officers, and directors is relevant to her hostile work environment claim to the extent that it may show Crawford sufficiently reported her claim for harassment. Moreover, evidence relating to the payment of bonuses could illustrate G&L's disparate treatment of Crawford or its failure to take meaningful action against harassers. G&L provides no binding authority or further explanation as to how these lines of inquiry fall outside the scope of discoverable information under Rule 26(b)(1).

To the extent that G&L seeks to strike responses to questions that allegedly fall outside the scope of Crawford's notice of deposition, the court rejects G&L's request. Deposition

10

questions regarding cellphones issued to G&L employees are reasonably within the scope of any

of the first four noticed deposition topics,[4] and Bursich's compensation, pay history, and

unemployment benefits could be grouped under noticed topics 16 and 17.[5] To the extent that any

of these lines of questioning fall outside the scope of the noticed topics, courts within the Third

Circuit appear to favor a rule requiring the deponent to answer all relevant questions, regardless

of the information contemplated by the notice of deposition. *See Bracco*, 2005 WL 6714281, at

*1-2; *Azur*, 2007 WL 2955614, at *1. Questions relating to the corporate relationship among

G&L, H&K, and River Asphalt, the corporate structure of G&L, and the extent of former G&L

president Robinson's continued interest in G&L following his retirement are sufficiently relevant

under Rule 26, given the matters at issue in the pending case.

Furthermore, G&L bears the responsibility of preparing its Rule 30(b)(6) witness on the

noticed deposition topics, absent the entry of a protective order or an order granting a motion to

quash. *See Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007); *see also Unzicker v. A.W.*

---

[4]The first four deposition topics include: "(1) Details regarding policies, practices and procedures regarding the hiring of employees including, but not limited to, the application process, the interview process, the explanation of benefits to new hires, the setup of the new employees in payroll, and the persons involved in the process. (2) Details regarding the application process and hiring of Tammy Crawford as an employee of G&L including the compensation and benefit package she was provided and who provided the information to the Human Resources or other responsible department. (3) Details regarding the policies practices and procedures regarding the orientation and training of new employees, the materials provided new employees as part of this process, and the people involved with this process. (4) Details regarding the training and orientation of Mrs. Crawford including the training she received, the materials she received, and the people involved in the process." (D.I. 185, Ex. 1)

[5]Deposition topics 16 and 17 read as follows: "(16) Details regarding the bonuses paid to employees at G&L from 2006 to present including how the bonus is determined, the percentage of gross income, and any other relevant factors in determining bonuses. (17) Details regarding all benefits provided to G&L employees at the time Mrs. Crawford was an employee of G&L." (D.I. 185, Ex. 1)

11

*Chesterston Co.*, 2012 WL 1966028, at *1 (E.D. Pa. May 31, 2012) (granting motion for protective order based on objections to deposition topics' scope, lack of particularity, and lack of relevance). In the absence of a motion to quash or a motion for a protective order in advance of the deposition, the court is not inclined to engage in a carve-out of the deposition transcript. The portions of the transcript in controversy have not been cited as factual support for either party's position in dispositive motions. Therefore, no useful purpose would be served by such an exercise at this time.

Furthermore, the court will not entertain G&L's request for sanctions. Sanctions are imposed sparingly, and as this court noted during oral argument on the parties' motions to dismiss, allegations of a lack of professionalism and civility are not taken lightly by the court.

The court is not persuaded by the authority cited by G&L in support of its request for sanctions. G&L cites the Eastern District of Pennsylvania's decision in *State Farm Mutual Automobile Insurance Co. v. New Horizont, Inc.* for the proposition that a Rule 30(b)(6) witness need not answer questions concerning topics not noticed in the notice of deposition. 250 F.R.D. 203, 217 (E.D. Pa. 2008). The court fails to see how this case supports G&L's position. The court in *State Farm* ultimately held that the preparation of the Rule 30(b)(6) witness was "grossly inadequate," and rejected State Farm's arguments that "Defendants' notices of deposition are overbroad, vague, and unduly burdensome," noting that it had already rejected the plaintiff's motion for a protective order which addressed the same issues. *Id.* at 218 n.10.[6]

_____

[6]The court is unable to follow G&L's reference to this court's decision in *Penn Mutual Life Insurance Co. v. Rodney Reed 2006 Insurance Trust*, 09-663-JCJ, 2011 WL 1636949 (D. Del. Apr. 29, 2011), for the proposition that "the witness need not answer the question" if it goes beyond the properly noticed scope. The court assumes, but cannot state with certainty, that G&L intended to

12

## 2. Affidavits of Crawford and Frank Crawford

In addition to moving to strike Brooks' Rule 30(b)(6) testimony, G&L seeks to strike certain paragraphs from the affidavits of Crawford and Frank Crawford because the affidavits conflict with the affiants' prior deposition testimony. (D.I. 185 at 6-7) Crawford responds that the challenged declarations cannot be shams because the affiants did not declare facts which contradict facts stated during the depositions.

Third Circuit precedent establishes that "statements which conflict with an individual's deposition testimony do not raise a genuine issue of material fact and can properly be disregarded when the conflict is unexplained or unsupported by other record evidence." *Ray v. Pinnacle Health Hospitals, Inc.*, 416 F. App'x 157, 164 n.8 (3d Cir. Nov. 22, 2010) (citing *Jiminez v. All Am. Rathskeller*, 503 F.3d 247, 253-54 (3d Cir. 2007)). The Third Circuit defines a "sham affidavit" as "a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez*, 503 F.3d at 253. If a sham affidavit is offered in an attempt to defeat summary judgment, the trial judge may conclude that "no reasonable jury could accord the affidavit evidentiary weight." *Id.* Affidavits, which are usually drafted by counsel, are viewed as less credible than deposition testimony. *Id.*

---

cite *Penn Mutual* in support of this proposition. The court's uncertainty is rooted in the fact that (1) G&L identifies the case name as *Penn Mutual Life Ins. v. **Ronald** Reed 2006 Ins. Trust*, and (2) the language quoted by G&L appears nowhere in *Penn Mutual*, nor does *Penn Mutual* quote the Eastern District of Pennsylvania's decision in *State Farm Mut. Auto Ins.* as indicated by G&L in its brief. (D.I. 196 at 3 n.3) Moreover, G&L identifies *Penn Mutual*, a decision from the District of Delaware, as "the law of the Third Circuit." (*Id.* at 2)

The Third Circuit has adopted a flexible approach in applying the sham affidavit analysis. Specifically, if independent evidence in the record bolsters an otherwise questionable affidavit, courts within the Third Circuit will generally not disregard the affidavit. *Id.* at 254 (citing *Baer v. Chase*, 392 F.3d 609, 624-25 (3d Cir. 2004)). The corroborating evidence may show that the affiant was mistaken, confused, or did not possess all of the facts during the deposition. *Id.* Moreover, an affidavit will not be disregarded as a sham if the affiant offers an explanation for the contradiction between the deposition testimony and the subsequent affidavit. *Id.*(citing *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)). However, if the contradiction between a subsequent affidavit and a prior deposition remains unexplained, the trial court may disregard the subsequent affidavit as a sham. *Id.*

Courts have held that a district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).[7] A party may attempt to resolve any contradictions arising from a memory lapse by providing a reasonable explanation. *Id.* at 1081 (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999)). "[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Van Asdale v. Int'l*

_____

[7] The court finds the Ninth Circuit's analysis of the sham affidavit rule in *Yeager* to be particularly persuasive due to certain parallels between the facts of this case and the facts before the court in *Yeager*. Moreover, the Third Circuit has expressly acknowledged that the Ninth Circuit adopts an approach consistent with the Third Circuit's approach when conducting the sham affidavit analysis. *See Jiminez*, 503 F.3d at 254 (citing *Kennedy v. Alllied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991)).

14

*Game Tech.*, 577 F.3d 989, 999 (9th Cir. 2009) (internal quotations omitted). However, if the affiant offers a weak explanation for his sudden ability to remember important facts about critical issues, invocation of the sham affidavit rule is appropriate. *Yeager*, 693 F.3d at 1081.

### a. Frank Crawford's affidavit

In view of the foregoing authorities, the court will strike paragraphs 6 and 7 of Frank Crawford's affidavit. Frank Crawford consistently maintained that he did not remember calling Hall to complain about G&L's alleged favoritism towards other truckers until he reviewed telephone records proving that he called Hall. (D.I. 160 at A78; D.I. 173 at P414) Upon reviewing the telephone records, Frank Crawford indicated in his sworn affidavit that he contacted Hall to complain that CTC's trucks were being treated differently than other hired haulers, that CTC had lost four drivers in a month due to the way they were treated at G&L, and that CTC's truck drivers were being sent out for sand and stone when they came to G&L's yard. (D.I. 174 at P666-67) As in *Yeager*, Frank Crawford "remember[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed." *Yeager v. Bowlin*, 2010 WL 95242, at *5 (E.D. Cal. Jan. 6, 2010). It is implausible that Frank Crawford could refresh his recollection of the entire telephone conversation with Hall by reviewing a single telephone record listing only the date and time of the call, and the number to which the call was placed. Moreover, the telephone records were not attached to Frank Crawford's affidavit, nor did the affidavit itself offer any explanation for the discrepancies with Frank Crawford's deposition testimony. (D.I. 174 at P666-67)

15

Paragraphs 8, 9, and 11 of Frank Crawford's affidavit should be stricken for the same reasons that paragraphs 6 and 7 should be stricken. Crawford concedes that paragraph 8 should be stricken from the record. (D.I. 194) At his deposition, Frank Crawford testified that he would not complain if CTC's trucks were sent out for sand and stone so long as the trucks had work to perform, and he denied calling Hall to tell her to pull CTC's trucks from the rotation. (D.I. 185, Ex. 6 at 36:14-19; 37:6-13; 37:18-38:9) Moreover, he emphasized the point that he would have no reason to complain since he would be earning money in that instance. To the contrary, in his affidavit, Frank Crawford states that he complained to Hall about CTC's trucks being sent out for sand and stone and G&L's treatment of CTC, but claims he never told Hall to take CTC's trucks off of G&L's schedule. (D.I. 185, Ex. 5 at ¶¶ 8, 9, 11) Frank Crawford offered no explanation for these discrepancies and, therefore, these paragraphs will be stricken from the record in accordance with the sham affidavit rule.

The court will also strike paragraphs 10 and 12 of Frank Crawford's affidavit because his deposition testimony shows that only Crawford was in charge of obtaining work for CTC, and Frank Crawford played no role in managing the schedules. (D.I. 185, Ex. 6 at 12:1-8; 41:17-21) Crawford's contention that "reasonableness dictates that any employee who has a general role may step outside that role if necessary" is not compelling in light of the fact that Frank Crawford expressly denied having any involvement in obtaining work for CTC during his deposition. The statements in Frank Crawford's affidavit, which show that Frank Crawford himself searched for additional work for CTC, are in direct conflict with his prior deposition testimony. (D.I. 185, Ex. 5 at ¶¶ 10, 12) Again, Frank Crawford offers no explanation for the discrepancies between his deposition testimony and the sworn statements he made in his affidavit. As a result, paragraphs

16

10 and 12 shall be stricken.

Crawford concedes that paragraphs 15 and 17 of Frank Crawford's affidavit should be stricken. (D.I. 185 at 10; D.I. 193 at 6) As such, these paragraphs shall be stricken.

### b. Crawford's affidavit

With respect to Crawford's second affidavit, the court will deny G&L's motion to strike paragraphs 6 to 8 of the affidavit because the statements made in the second affidavit are not inconsistent with Crawford's prior deposition testimony. Crawford characterized G&L's assurances regarding the impact of her employment on the relationship between CTC and G&L as a "statement" in her second affidavit and a "promise" in her deposition testimony. (D.I. 185, Ex. 4 at ¶¶ 6-8, Ex. 10 at 25, 29, 38) Although Crawford's characterization of G&L's representations differs slightly, Crawford consistently maintains that G&L told her that her work for G&L would not harm G&L's relationship with CTC if her employment with G&L ended. The discrepancies relate more to semantics than to substance, and Crawford does not contradict or omit statements made in her prior deposition. *Cf. Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 547 (3d Cir. 2012) (refusing to consider affidavit which included, for the first time, an assertion that the plaintiff believed his manager might randomly assault him, because the omission of such a crucial fact was "highly questionable.").

G&L's motion to strike paragraph 10 of Crawford's affidavit is denied. Crawford acknowledges in her deposition that she was told at the time she was hired that she would make "[a]pproximately $45,000 per year," and she confirmed that she filled out her weekly time sheets with the word "Salary" in the box for total number of hours worked. (D.I. 185, Ex. 10 at 40-41,

17

213, 217, 229-34)  However, Crawford later testifies that she did not know at the time she was hired whether she would be an hourly or salaried employee.  In paragraph 10 of Crawford's second affidavit, she claims that she "was not told by anyone at G&L whether [she] would be paid hourly or salary."  (D.I. 185, Ex. 4 at ¶ 10)  Whether or not the testimony is in conflict is a matter to be resolved by the finder of fact.

G&L's motion to strike paragraph 13 of Crawford's affidavit is denied.  Crawford's deposition testimony does not clearly illustrate what was covered in Brooks' discussion with Crawford.  Specifically, when asked if Brooks gave Crawford a package of information on the day of her interview, Crawford responded, "Not that I recall.  He discussed."  (D.I. 185, Ex. 10 at 124:5-10)  Crawford did not specify whether Brooks' discussion covered the sexual harassment policy.  Therefore, Crawford's statement in her second affidavit that she "received no training regarding the sexual harassment policy and the policy was not read or gone over with me by anyone" is another issue in the province of the jury.  (D.I. 185, Ex. 4 at ¶ 13)

G&L's motion to strike paragraphs 15 and 77 of Crawford's affidavit is denied.  Paragraph 15 of the affidavit states that Bursich was Crawford's supervisor, and she later states that Brooks became her supervisor after she was transferred.  (D.I. 185, Ex. 4 at ¶¶ 15, 77)  There is a discrepancy in the record as to whether Brooks or Jones informed her that Brooks would be her supervisor following the transfer.  (*Id.*, Ex. 4 at ¶ 77; Ex. 10 at 83)  Also, Crawford testified at her deposition that her supervisors were both Bursich and Jones, and not just Bursich.  (*Id.*, Ex. 10 at 75-76)  Whether or not the testimony gives rise to a substantive conflict, and whether any such conflict is the result of a reasonable mistake or creates a credibility issue, are matters to be resolved by the finder of fact.

18

G&L's motion to strike paragraphs 67 to 76 of Crawford's affidavit is denied. Crawford concedes that the affidavit is inconsistent with the prior deposition testimony, however, she objects to the motion to strike this portion, stating that "[r]easonableness dictates that a party may be mistaken concerning a date, especially if that mistake is minor, such as a one-day disparity." (D.I. 193 at 8-9) (emphasis in original). The court leaves it up to the fact finder to consider whether Crawford made a reasonable mistake about the date or whether credibility is in issue.

G&L's motion to strike paragraphs 94 to 98 of Crawford's affidavit is denied. Crawford's testimony that she spoke to Taylor before she was terminated is not directly contradictory to her testimony that she spoke to Taylor following her termination. Crawford's deposition testimony could be interpreted as indicating that she spoke to Taylor both before and after she was laid off. (D.I. 173 at P471-73, P475-78; P500-502)

G&L's motion to strike paragraphs 81 and 83 of Crawford's affidavit is denied. Crawford had personal knowledge of the amount of business CTC received from G&L following her transfer to Dover because she continued to manage CTC while working for G&L in Dover. With respect to paragraph 81, the court acknowledges that Crawford experienced her abrupt transfer to Dover first-hand. Crawford's declaration that "[i]t was apparent to [her] that this transfer was not planned" is an issue best dealt with at trial. (D.I. 185, Ex. 4 at ¶ 81) The trial judge is in the best position to assess objections to the admissibility of such a statement. Crawford's testimony describing the suddenness of her transfer and the lack of a sufficient workspace in Dover constitute proper factual statements, but the determination of whether the transfer was planned must be left to the finder of fact. *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). As a result, the court will deny G&L's motion to strike paragraphs 81 and 83

of Crawford's second affidavit.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(1)   Crawford's motion to strike (D.I. 167) is DENIED; and

(2)   G&L's motion to strike and for sanctions (D.I. 185) is GRANTED-IN-PART and

DENIED-IN-PART.  Specifically, the court rules as follows:

      (a)   G&L's motion to strike the deposition testimony of its Rule 30(b)(6) witness and for sanctions regarding same is DENIED;

      (b)   G&L's motion to strike paragraphs 6, 7, 8, 9, 10, 11, 12, 15, and 17 of Frank Crawford's affidavit is GRANTED; and

      (c)   G&L's motion to strike paragraphs 6, 8, 10, 13, 15, 67 to 77, 81, 83, and 94 to 98 of Crawford's second affidavit is DENIED.

Dated: December 9, 2013

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

20